RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 22a0125p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
─────────────────

TARRIFY PROPERTIES, LLC, individually and on behalf
of all others similarly situated,

*Plaintiff-Appellant,*

*v.*

CUYAHOGA COUNTY, OHIO,

*Defendant-Appellee.*

> No. 21-3801

─────────────────

Appeal from the United States District Court for the Northern District of Ohio at Cleveland.
No. 1:19-cv-02293—James S. Gwin, District Judge.

Argued: June 9, 2022

Decided and Filed: June 14, 2022

Before: SUTTON, Chief Judge; COLE and DONALD, Circuit Judges.

─────────────────

## COUNSEL

**ARGUED:** Matthew C. De Re, ZIMMERMAN LAW OFFICES, P.C., Chicago, Illinois, for Appellant. Stephen W. Funk, ROETZEL & ANDRESS, LPA, Akron, Ohio, for Appellee. **ON BRIEF:** Marc E. Dann, DANN LAW, Lakewood, Ohio, Thomas A. Zimmerman Jr., ZIMMERMAN LAW OFFICES, P.C., Chicago, Illinois, for Appellant. Stephen W. Funk, ROETZEL & ANDRESS, LPA, Akron, Ohio, for Appellee. Matthew P. Yourkvitch, YOURKVITCH & DIBO, LLC, Cleveland, Ohio, for Amici Curiae.

─────────────────

## OPINION

─────────────────

SUTTON, Chief Judge. At stake is whether the district court correctly refused to certify a class of owners of foreclosed properties in Cuyahoga County, Ohio, all of whom challenge

Ohio's tax-foreclosure statute as a taking under the federal and state constitutions. While the claimants share a common legal theory—that the targeted Ohio law does not permit them to capture equity in their properties after the county transfers them to a land bank—they do not have a cognizable common theory for measuring the value in each property at the time of transfer. We affirm.

I.

Ohio law permits counties to tax property within their jurisdiction. County auditors determine each property's value every six years. Ohio Rev. Code §§ 5713.01, 5713.03. Counties may impose a fixed tax rate based on that value. Failure to pay the assessed taxes permits the county to foreclose the property by filing a lawsuit to "enforce the lien for the taxes" on the delinquent land. *Id.* § 323.25. A judicial foreclosure proceeding usually follows, after which the county sells the land at a public auction, the proceeds of which cover the tax delinquency. *Id.* § 323.73. If the sale produces leftover proceeds, the county "shall pay such excess to the owner" upon demand. *Id.* § 5721.20.

In addition to this traditional process for dealing with abandoned property, Ohio introduced an alternative process—the land-bank transfer at issue today—in 2008. *Id.* § 323.65. It permits counties to bring foreclosure proceedings in the "county board of revision" rather than in court. *Id.* § 323.66. And it authorizes counties to transfer the land to authorized land banks rather than dispose of the property at auctions. *Id.* § 323.78(B). Upon transfer, the land becomes "free and clear of all impositions and any other liens on the property, which shall be deemed forever satisfied and discharged." *Id.* The State forgives any tax delinquency, and the fair market value of the land becomes irrelevant, as it makes no difference whether the tax impositions and costs of the action "exceed the fair market value of the parcel." *Id.*

Under this alternative process, state law offers several protections for the owners of abandoned property. The Board of Revision must provide notice to landowners, *id.* § 323.66, and the county must run a title search "for the purpose of identifying . . . persons having a legal or equitable ownership interest," *id.* § 323.68(A)(1). Once notified, owners may transfer a case from the Board to a "court of common pleas or to a municipal court with jurisdiction" to handle

any state or federal challenges to the foreclosure. *Id.* §§ 323.691(A)(1), 323.70(B). Owners at this point also may pay the outstanding taxes, end the proceeding, and get their land back. *Id.* § 323.72. After the Board's foreclosure decision, property owners have 28 days to pay the outstanding tax delinquency and recover their land. *Id.* § 323.65(J). They also may "file an appeal in" Ohio's trial court of general jurisdiction. *Id.* § 323.79. In addition to "issues raised or adjudicated in the proceedings before the county board of revision," the owners may raise other issues relevant to the potential transfer. *Id.*

What landowners cannot do under this alternative approach is obtain the excess equity in the property after the land bank receives it. If such an interest exists, the statute offers no way to capture it.

Tarrify Properties owned land once used as a Kentucky Fried Chicken restaurant on 11600 Miles Avenue in Cleveland, Ohio. From 2015 to 2018, the property was vacant, and Tarrify did not pay its property taxes. In 2018, the Cuyahoga County Auditor valued Tarrify's property at $164,700. Premised on this valuation, the county determined that Tarrify owed over $35,000 in taxes, fees, and assessments. The county invoked the alternative tax-foreclosure approach and launched a proceeding at the Board of Revision to transfer title to the property to a land bank in August 2018.

In May 2019, the Board foreclosed the property. It ordered the transfer of the property to the Cuyahoga County Land Reutilization Corporation. After the 28-day redemption period ended, the county transferred the property. Through each of these steps, Tarrify did not appear at the Board's hearing, pay the outstanding taxes, request a transfer to the court of common pleas, or contest the foreclosure of its property.

In October 2019, Tarrify sued Cuyahoga County in federal court under 42 U.S.C. § 1983, claiming that the land transfer violated the U.S. Constitution's Fifth and Fourteenth Amendment prohibition on takings without just compensation and the Ohio Constitution's takings clause. Tarrify moved to certify a class of Cuyahoga County landowners who have purportedly suffered similar injuries. Fed. R. Civ. P. 23(b)(3). At the same time, the parties filed dueling motions in

limine over whether county tax appraisals could be admitted as evidence with respect to the fair market value of the properties.

The district court denied the certification motion and deemed the county tax appraisals inadmissible. A panel of our court permitted an interlocutory appeal of the district court's denial of class certification. *In re Tarrify Props., LLC*, No. 21-0301 (6th Cir. Sept. 8, 2021); *see* Fed. R. Civ. P. 23(f).

## II.

The Fifth Amendment to the U.S. Constitution, incorporated against the States via the Fourteenth Amendment, says that "private property [shall not] be taken for public use, without just compensation." U.S. Const. amend. V. The Ohio Constitution provides that "where private property shall be taken for public use, a compensation therefor shall first be made." Ohio Const. art. I, § 19. Tarrify claims that Ohio's transfer of its property without payment for the surplus equity violates both guarantees.

We reserved the federal merits question in *Harrison v. Montgomery County*, 997 F.3d 643, 652 (6th Cir. 2021). A similar path awaits us today for these claims. Before reaching the merits of each claim, the district court resolved Tarrify's motion to certify a class of similarly situated landowners, a sequence appropriate for handling this appeal.

In its motion to certify the class, Tarrify sought relief on behalf of owners of tax-foreclosed properties in which "the total value of that property exceeded the amount of the impositions on that property at the time the transfer occurred." R.50 at 1. Before certification, a putative class must satisfy several familiar requirements: numerosity, commonality, typicality, and adequate representation. *Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460, 466 (6th Cir. 2017). On top of that, for Rule 23(b)(3) classes like Tarrify's, the plaintiff also must show predominance (that "the questions of law or fact common to class members predominate over any questions affecting only individual members"), superiority (that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy"), and ascertainability (an implied requirement that the putative class members can be readily identified based on the class definition). *Id.* at 466, 471. While we give fresh review

to any legal interpretations of Civil Rule 23, we give abuse-of-discretion review to the district court's ultimate judgment whether to certify a class. *Id.* at 466.

The district court did not abuse its discretion in denying Tarrify's motion to certify this class. Its decision does not require us to dig too deep into the weeds of class action law because the key impediment to certifying the class—identification of proposed members of the class— haunts every consideration. Although our court typically analyzes each Civil Rule 23 requirement independently, *Hicks v. State Farm Fire & Cas. Co.*, 965 F.3d 452, 459–65 (6th Cir. 2020), the analysis may sometimes overlap. Over and over, courts have explained that elusive class composition often undermines efforts to meet the ascertainability, predominance, and superiority requirements. *Cf. Sandusky Wellness Ctr.*, 863 F.3d at 471–72 (collecting cases and noting how class identity problems can be analyzed under all three requirements).

Take ascertainability. A "class definition must be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member of the proposed class." *Id.* at 471 (quotation omitted). If "mini-trials" become necessary to determine who is in and who is out, the class-action vehicle imposes inefficiencies rather than ameliorates them. *Id.* at 471–74. The key impediment in this case is that the court must ask whether a given property's fair market value exceeds the taxes owed at the time of the transfer to determine who is in the class. Determining fair market value requires an independent and individualized assessment of each absent class member's property. As the appraisal experts on both sides agree, the valuation of real property depends on many circumstances, including the size, location, use, and condition of the property and the relevant market conditions at the time of the transfer. The market and physical conditions of each property will vary. So too will the dates of each transfer. As such, a court must conduct an individualized, fact-intensive, and adversarial process to determine the fair market value for each property.

Such are the vagaries of fair market value that it is not even clear whether the lead class member, Tarrify, comes within the class. The county's expert testified that Tarrify's property value fell *below* the taxes owed. If accurate, that means Tarrify itself falls outside the proposed class.

Other problems bubble up from the imperative of matching these claims with this class definition. Common questions subject to classwide proof must predominate over individualized questions, prompting us to ask whether the proposed class action beats the conventional approach of resolving disputes on a case-by-case basis in terms of efficiency and administrability. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348–57 (2011). Problems emerge on these predominance and superiority fronts, most acutely, when a controlling issue requires individualized determinations ill-equipped for classwide proof. *Sandusky Wellness Ctr.*, 863 F.3d at 468–72; *Pipefitters Loc. 636 Ins. Fund v. Blue Cross Blue Shield of Mich.*, 654 F.3d 618, 631–32 (6th Cir. 2011); *Woodall v. Wayne County*, No. 20-1705, 2021 WL 5298537, at *5–8 (6th Cir. Nov. 15, 2021).

Even as the claims turn on a question that is easy to understand—does each property include surplus equity?—they require proof that is variable in nature and ripe for variation in application. The shifting facts and circumstances about the value of each property likely will dominate the proceedings, as the district court found, and run the risk of undercutting the efficiencies and ease of administration that otherwise might favor classwide resolution of the claims. Look at what you wish—ascertainability, predominance, or superiority—the district court reasonably rejected this class-certification motion given the individualized nature of each inquiry into the fair market value of each property at the time of transfer.

Tarrify offers several potential ways to sidestep this conclusion. None suffices.

*Tax appraisals.* Tarrify maintains that the 2018 tax valuations by the Cuyahoga County Auditor solve the problem of determining the fair market value of each property. Why worry about individualized inquiries if the Auditor has already done them for each property? And why tarry over their accuracy given that the Auditor relies on them for each tax assessment? What is sauce for tax assessment impositions, Tarrify claims, should be sauce for fair market value takings claims.

But what seems simple is not. A government's assessment of the value of property for tax purposes creates a "default valuation" with respect to property value, not an unrebuttable finding of value. *FirstCal Indus. 2 Acquisitions, L.L.C. v. Franklin Cnty. Bd. of Revision*,

929 N.E.2d 426, 432 (Ohio 2010) (quotation omitted). That explains why Cuyahoga County permits landowners to challenge these assessments. Ohio Rev. Code § 5715.19. This challengeable presumption thus represents a potential starting point, in truth a data point, for ascertaining fair market value, not a conclusive answer.

Consistent with this presumption, it is useful to remember that these property valuations occur only at six-year intervals, creating a mismatch between the time of the appraised value and the time of the transfer. A lot can happen to property values over time, whether one year (as with Tarrify) or more years (as with other members of the proposed class). That is especially so for *abandoned* property, the only kind of property eligible for transfers to land banks and the only kind of property included in this proposed class. How would a factfinder uniformly measure changes in value caused by abandonment of different properties in different parts of Cuyahoga County for different lengths of time? We cannot envision a generic approach to the problem. Not even sub-classes—say for a sub-class of properties transferred in 2019, one for properties transferred in 2020, and so on—would fix the problem. Depreciation of abandoned properties, or for that matter appreciation of them, over time will vary based on what is happening in different parts of the county. Hence the tired—but accurate—expression "location, location, location." *See* William Safire, *On Language: Location, Location, Location*, N.Y. Times Mag., June 28, 2009, at 14 (discussing the origin of the phrase).

The rooting and uprooting that time imposes on abandoned properties and the idiosyncrasies of location are not the only difficulties with using tax valuations. No less problematically, they use a rough justice method for valuing property. Taxation requires "uniformity in the mode of assessment upon the taxable valuation" and ease of administration, *Poffenberger v. Bd. of Revision of Clermont Cnty.*, 375 N.E.2d 65, 67 (Ohio Ct. App. 1977) (quotation omitted), two goals that shortchange accuracy when it comes to specific properties. The mass appraisal methodology used by counties, most notably, does not consider the interior conditions of each property.

That reality and other features of this method take us back to the "general rule" in Ohio that "the assessed valuation of property is not evidence of value for" non-tax purposes. *Ohio Cas. Ins. Co. v. D & J Distrib. & Mfg., Inc.*, No. L–08–1104, 2009 WL 2356849, at *4 (Ohio Ct.

App. July 31, 2009) (quotation omitted); *Cincinnati v. Jennewein*, No. C-77240, 1978 WL 216461, at *1 (Ohio Ct. App. June 7, 1978) (per curiam).  Ohio does not stand alone in these respects.  *See, e.g.*, *United States v. Certain Parcels of Land in Arlington*, 261 F.2d 287, 289–91 (4th Cir. 1958) ("The general rule is that [tax assessment] evidence is not admissible on the question of value in a condemnation proceeding."); *United States v. 0.59 Acres of Land*, 109 F.3d 1493, 1495–96 (9th Cir. 1997) (reversing district court's admission of tax assessments); *Dubinsky Realty Co. v. Lortz*, 129 F.2d 669, 673–74 (8th Cir. 1942) (same); *Johnson & Wimsatt v. Reichelderfer*, 50 F.2d 336, 337 (D.C. Cir. 1931) (same); *Bowie Lumber Co. v. United States*, 155 F.2d 225, 228 (5th Cir. 1946) (affirming district court's rejection of tax assessment as consistent with the "great weight of authority").  One surveyor of the caselaw concluded that it is "overwhelmingly established" that "assessed valuation" does not create cognizable proof of "valuation for purposes other than taxation."  C. C. Marvel, Annotation, *Valuation for Taxation Purposes as Admissible to Show Value for Other Purposes*, 39 A.L.R.2d 209 § 2 (2022).

Tarrify seeks to avoid the conclusion that flows from this general rule.  Noting that the imposition of taxes under Ohio law should reflect "as nearly as practicable" a property's "true value," Ohio Rev. Code § 5713.03, it insists that the valuation necessarily equals the fair market value of each property.  But Ohio courts have already rejected this theory, as just shown.  *See Ohio Cas. Ins. Co.*, 2009 WL 2356849, at *4 (rejecting argument that § 5713.03 permits the use of assessed valuations).

The facts of the named plaintiff's case illustrate the problem.  Tarrify's property sat abandoned for more than a year between the 2018 tax appraisal and its transfer to the land bank.  No one disputes that Tarrify's property experienced extensive vandalism that significantly damaged the interior of the building.  Yet the auditor's mass appraisals do not take such internal conditions into account.  All of the parties' appraisal experts agree as a result that the fair market value of the property on the transfer date was significantly lower than the auditor's 2018 valuation.  One expert found that Tarrify's property value dropped significantly—by around $150,000—removing any equity in the property at all.  Accurate or not, that valuation and the others confirm that an attempt to use tax valuations would prompt one individualized dispute after another.  So far as the record and pleadings show, it is difficult to see how the fair market

value of just one property covered by the class definition could be established for takings purposes by the six-year tax valuations.

Mass county-wide tax valuations, it is true, have become more sophisticated over time. In some settings, it is also true, Ohio permits the use of an "auditor's then-current valuation" of property as "rebuttable" "prima-facie evidence" of fair market value "regardless of whether an independent appraisal has been performed." Ohio Rev. Code § 323.71(B). But that is only in this materially distinct setting: when the county seeks to transfer property *without* a right of redemption and the Board therefore must determine at a hearing that the taxes owed exceed the value of the property. *Id.* § 323.71. This law also does not solve the mini-trial problem anyway. The potential circumscribed utility of tax valuations does not solve the problem of time, location, interior value, and other realties of measuring the fair market value of abandoned properties at the time of an alleged taking. The district court did not abuse its discretion in finding that "myriad mini-trials" loomed over the nature of this proposed class. *Sandusky Wellness Ctr.*, 863 F.3d at 470.

In view of this conclusion, we need not resolve whether the district court should have permitted the tax valuations to be considered in resolving the class-certification motion. Admissible or not, they do not show that this class should have been certified.

*Collateral Estoppel.* Tarrify separately argues that the Board's transfer of the relevant properties rests on the county's tax valuations, collaterally estopping the county from arguing that the properties' fair market values fall below the tax valuations.

Federal courts apply the preclusion law of the State that rendered the initial judgment. *CHKRS, LLC v. City of Dublin*, 984 F.3d 483, 490 (6th Cir. 2021). Ohio law requires collateral estoppel, often given the user-friendly name of issue preclusion, when: (1) there are identical parties (or parties in privity) across two suits; (2) there was a final judgment in the earlier suit; and (3) "the relevant 'issue'" was "'actually' and 'necessarily' litigated in the prior case." *Id.* at 491.

Tarrify fails to successfully navigate the third requirement. At issue is whether the prior tribunal actually "resolved the issue" at play. *Id.* It did not. The Board never made any findings

on the fair market value of the property in its tax foreclosure order.  Nor was it necessary to do so, as the Board may order transfer of the property "regardless of whether the value of the taxes, assessments, penalties, interest, and other charges due on the parcel, and the costs of the action, exceed the fair market value of the parcel."  Ohio Rev. Code § 323.78(B).  Not only was fair market value never challenged before the Board, it was never at issue.  Application of the transfer statute does not require an inquiry into fair market value.  *See Ohio Cas. Ins. Co.*, 2009 WL 2356849, at \*4–5 (insurer not collaterally estopped from asserting that property value was higher than auditor's tax value because auditor's value was never litigated in prior proceeding).

It does not help matters that the Board may resolve the fair market value of property in other circumstances.  True, Ohio Revised Code § 323.73(G) allows direct transfers without a 28-day alternative redemption period *only* "[i]f the county board of revision finds that the total of the impositions against the abandoned land are greater than the fair market value of the abandoned land as determined by the auditor's then-current valuation of that land."  True also, the Board may consider the fair market value of property when the landowner files a motion to challenge "whether the impositions against the parcel of abandoned land exceed or do not exceed the fair market value of that parcel as shown by the auditor's then-current valuation of that parcel."  *Id.* § 323.71(A).  But neither situation applies to the abandoned properties covered by this transfer provision and this proposed class.

Tarrify adds that the county regularly testifies before the Board about the auditor's most recent tax valuation of the property.  Fair enough.  But the Board, even so, still did not "resolve[] the issue" of fair market value at the time of transfer in this case.  *CHKRS*, 984 F.3d at 491.  That the county presents such evidence to determine ballpark values does not estop it from showing fair market value at the time of transfer or for that matter preclude the property owner from doing the same.

*Judicial estoppel.*  Tarrify likewise invokes judicial estoppel to bind the county to the tax valuations.  But a doctrinal mismatch likewise defeats this argument.  The doctrine prevents a party only from taking two "clearly inconsistent" positions at different times to the "unfair detriment" of the opposing party.  *New Hampshire v. Maine*, 532 U.S. 742, 750–51 (2001).  That did not happen here because the county never claimed that it was using the tax valuations

*exclusively* to establish fair market value and because the transfer statute indeed did not require such a finding.

Repetition of the key theme of its appeal—that tax valuations "[e]ither" "reflect the 'true value' of the properties or they do not," Appellant's Br. 36—does not make it so. General valuations for tax purposes in six-year intervals do not establish fair market value on the day of a transfer for every property in the class—or even a meaningful number of them.

*Alternative measures.* Tarrify also identifies three alternative measures that might make classwide relief more palatable: (1) appointing a special master to determine fair market value disputes, (2) creating subclasses based on the extent that the tax appraisal value exceeds tax impositions, and (3) conducting a new "mass appraisal" for all properties at issue. But none of these proposals cures the problem that this case will boil down to mini-trials over each property's value upon transfer. The party seeking certification bears the burden of showing compliance with Civil Rule 23. *Sandusky Wellness Ctr.*, 863 F.3d at 466. Tarrify has not shown that the district court abused its discretion in rejecting these or any other arguments.

We affirm.